Clarence W. WEIR, Appellant,

v.

The STATE of Texas, Appellee.

No. 47688.

Court of Criminal Appeals of Texas.

Jan. 16, 1974.

---

Paul B. Underkofler, Jr., Dallas (Court appointed), for appellant.

Henry Wade, Dist. Atty., Robert T. Baskett, Asst. Dist. Atty., Dallas, Jim D. Vollers, State's Atty. and Buddy Stevens, Asst. State's Atty., Austin, for the State.

OPINION

REYNOLDS, Commissioner.

The conviction, following a jury trial, is for felony theft. The punishment, assessed by the jury, is ten years confinement.

Appellant lists twenty grounds of alleged error. The last ground questions the sufficiency of the evidence to sustain the conviction.

The record establishes that in the latter part of December, 1966, fifty numbered cashier's check forms, part of an order being printed for the Mercantile National Bank in Dallas, were stolen from the company printing the order when its Dallas office was burglarized. The serial numbers of the stolen checks were reported to the Mercantile National Bank.

Subsequent to January 4, 1967,[1] six of the stolen cashier's checks, completed to reflect regular and authorized issuance, were received for payment by the Mercantile National Bank from the First Citizens Bank in Dallas. All six checks were dated January 3, two were in the amount of $500.00, four were in the amount of $800.-00, and all named the payee as Charles F. Wier and were endorsed in that name. The Mercantile National Bank refused to honor the checks as forgeries and returned them unpaid to the First Citizens Bank.

Investigation revealed that on December 29, 1966, a new account was opened at the First Citizens Bank in the name of Charles F. Wier with a $100.00 cash deposit. On January 3, one of the stolen cashier's checks in the amount of $800.00 was presented to the First Citizens Bank; $300.00 therefrom was credited as a deposit to the new Charles F. Wier account and $500.00 cash was paid to the presenter. On January 4, five more of the checks were presented to the First Citizens Bank.

1. Unless otherwise noted, all dates hereafter mentioned are in the year 1967.

A portion of the proceeds of each check was deposited in the Charles F. Wier new account and the difference in the face amounts was secured in cash by the presenter. The First Citizens Bank paid out a total of $2,200.00 cash upon presentation of the six cashier's checks.

One of the stolen checks, completed to show issuance in the sum of $500.00, had been presented to Mary L. Caussey, an employee of the First Citizens Bank for twelve years. It was her testimony that at approximately 6:30 p. m. on January 4, a white pick-up truck, occupied by two men, was driven to the bank drive-in window where she was on duty. The driver handed her the $500.00 check and a deposit slip completed to show a deposit of $200.00 to the new account in the name of Charles F. Wier.

Mrs. Caussey became suspicious of the cashier's check because the dollar amount figures were typewritten instead of being machine imprinted. Since it was a new account, Mrs. Caussey telephoned a bank official. Upon being informed that the new account balance was in excess of the $300.00 cash requested and that there was nothing to show why the check should not be cashed, Mrs. Caussey accepted the check and gave the driver $300.00 in cash in the form of three $100.00 bills.

During the two to five minutes it required Mrs. Caussey to check the account, she was observing the driver, who kept looking at her and glancing away. The light shining from her drive-in booth window and an overhead light directed downward on the pick-up truck gave her a clear view of the driver. She was trained to pay particular attention to, and was experienced in visualizing the facial features of, the bank's customers. Mrs. Caussey identified appellant as the driver who presented the stolen cashier's check to her and received the $300.00 cash. This transaction

was the basis of the indictment returned against appellant.

Appellant presented a defense of alibi. His testimony was that he, his wife, their son and his stepson, left their home in Fort Worth on the night of December 31, 1966, enroute to Atlanta, Georgia. They arrived the next morning at the home of his wife's parents in Greenwell Springs,[2] Louisiana. Leaving there around midnight, they arrived in Atlanta on the morning of January 2. That afternoon and the next day they visited appellant's brother, who was confined in a federal institution. Departing Atlanta on the afternoon of January 3, appellant and his family spent the night in Jackson, Mississippi, and arrived in Greenwell Springs on the morning of January 4. They stayed there until January 5 and left for their home, arriving in Fort Worth about midnight on January 5.

The alibi testimony of appellant was substantially corroborated by his ex-wife[3] and her son. Additionally, the father of appellant's former wife testified that appellant and his family visited in his home in Greenwell Springs during the day of January 1, and returned about noon on January 4, staying until after lunch on January 5.

In rebuttal, the state called Ann Johnson, a teller at the First Citizens Bank. Her testimony was that about noon on January 4 a man drove a white pick-up truck to the bank drive-in window where she was on duty. He gave her a deposit slip completed to show a $200.00 deposit to the new account of Charles F. Wier and one of the stolen cashier's checks made in the sum of $500.00. Mrs. Johnson gave the man $300.00 cash as a result of this transaction. Mrs. Johnson identified appellant as that man.

In judging the credibility of the witnesses and the weight to be given their testimony, the jury had before it appellant's direct examination testimony that he

2. The name of this place is also shown in the record as Greenville Springs.

3. Appellant was divorced at the time of this trial.

**574**

had been convicted of the felony offenses of forgery in 1963 and theft in 1968, and the cross-examination admission of a conviction in 1961 for unlawfully carrying a pistol. The jury rejected appellant's defense of alibi. Considering, as we must, the evidence in the light most favorable to the jury's verdict, Jones v. State, 442 S. W.2d 698, 702 (Tex.Cr.App.1969), we find the evidence sufficient to support the conviction.

■ The first five grounds are appellant's allegations of error in the trial court's denial of his motion for issuance of process to command the appearance of three out-of-state witnesses and one in-state witness, and for funds to obtain the services of a handwriting analyst. The motion referred to was filed some two months prior to the commencement of this trial. There is absolutely nothing in this record to reflect that the motion was presented or called to the attention of the trial judge or that the trial judge denied the motion. Since there is no order of denial and no exception thereto shown in the record, nothing is presented for review. Gomez v. State, 171 Tex.Cr.R. 252, 346 S. W.2d 847 (1961), cert. denied 368 U.S. 947, 82 S.Ct. 386, 7 L.Ed.2d 343 (1961); Rosser v. State, 318 S.W.2d 82 (Tex.Cr.App.1958).

■ The remaining grounds numbered six through nineteen, inclusive, are not in compliance with, and are wholly insufficient under, Article 40.09, § 9, Vernon's Ann.C.C.P. Simply referenced to the record page numbers for, but without separate particularization of, the asserted errors, some of the grounds are mere statements; others are amplified only by a declaration that the referenced error has prejudiced appellant. None of the grounds is briefed, there being a total lack of argument and citation of authority. Consequently, the statements are not proper grounds for consideration, and they present nothing for review. Norris v. State, 482 S.W.2d 280 (Tex.Cr.App.1972); Kendrick v. State, 481 S.W.2d 877 (Tex.Cr.App.

1972); Casey v. State, 475 S.W.2d 920 (Tex.Cr.App.1972).

We do note, however, in reviewing the record to determine the sufficiency of the evidence to support the conviction, that had the grounds numbered six through nineteen, inclusive, been properly drafted, no reversible error would have been presented. It follows that all grounds of error are overruled.

The judgment is affirmed.

Opinion approved by the Court.